# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 16cr1116-BEN |
|---|---|
| Plaintiff, | |
| vs. | **ORDER DENYING MOTION TO DISMISS INDICTMENT** |
| FRANCISCO OCHOA-OREGEL, | |
| Defendant. | |

Now before the Court is Defendant's Motion to Dismiss the Indictment. Upon review, this Court finds a valid underlying removal order. Therefore, the motion to dismiss the indictment is denied.

## I. BACKGROUND

Ochoa-Oregel is charged with the crime of Attempted Reentry of a Removed Alien in violation of 8 U.S.C. § 1326(a) and (b). From the record before the Court, it appears that there is no dispute as to the following salient facts.

Ochoa-Oregel is a citizen of Mexico. He originally had lawful permanent resident status ("LPR"). In 2008, he was ordered removed after a formal hearing at which he was represented by counsel but failed to personally appear. He was physically removed in early 2010. In 2011, he returned to the United States and presented his LPR card to an inspector at a port of entry. He was ordered removed the following day in an expedited removal proceeding because he had lost his LPR status as a result of the 2008 final order. Following these two separate removals, on

March 15, 2016, he was allegedly arrested in the United States in an undeveloped area north of the California-Mexico border and is now charged with attempted reentry after having been previously removed.

## II. CHALLENGING THE UNDERLYING REMOVAL ORDER

Ochoa-Oregel has moved to dismiss the indictment pursuant to 8 U.S.C. § 1326(d).  He argues that his removal order in 2008 was fundamentally unfair. Although the 2008 removal order was valid at the time it was entered, it might not be under the analytical approach required today.  But it does not matter.  The 2011 removal order is independent of the 2008 order and provides a valid basis for the current criminal charge.[1]  Turning then to the more recent removal, he argues that his 2011 removal order was also fundamentally unfair because he was denied rights and remedies afforded persons with LPR status.  Finally, he argues that the 2011 expedited proceeding denied him due process and that it is plausible he would have been given relief in the form of withdrawal of application for admission.

Assuming for the sake of argument that the 2008 proceedings would be deemed fundamentally unfair under today's categorical approach, the vitality of the current prosecution rests on the validity of the 2011 removal order. Defendant's arguments attacking the 2011 order are based on two unavailing arguments. Defendant's first argument is built entirely upon the supposition that he continued to enjoy LPR status after the 2008 removal order due to alleged flaws in that proceeding.  Case law and regulations do not support that claim.  Defendant's second argument is based upon alleged deprivations of due process rights during the expedited removal.  But that argument fails to distinguish between due process rights enjoyed by aliens within the United States, and non-LPR aliens who have not

---

[1] *See e.g., United States v. Alarcon-Tapia*, 599 Fed. App'x 278, 279 (9th Cir. 2015) ("As an initial matter, we assume, without deciding, that the 1998 removal order is invalid.  Even so, the 2003 expedited removals are not reinstatements of the 1998 removal, but rather are distinct removal orders that may serve as stand-alone predicates for a prosecution under 8 U.S.C. § 1326.  Under these circumstances, the invalidity of one removal order does not taint a subsequent, distinct removal order.") (citations omitted).

yet entered the United States. In 2011, Defendant had not entered the United States but had only approached the port of entry. As such, he did not enjoy the same rights guaranteed by the Due Process Clause, enjoyed by LPRs residing in the United States. Consequently, he cannot make out a case that he was denied rights he did not have and he cannot succeed in his claim that the expedited removal proceeding was deficient.

### A. Collateral Attack Under § 1326(d)

An individual charged with illegal reentry under 8 U.S.C. § 1326 has a right to challenge the removal that underlies the criminal reentry charge. The criminal charge may be dismissed if the three prongs of §1326(d) are satisfied.

> Section 1326(d) . . . . authorizes collateral attack on three conditions: (1) that the defendant exhausted available administrative remedies; (2) that the removal proceedings deprived the alien of the opportunity for judicial review; and (3) that the removal order was fundamentally unfair. Removal is fundamentally unfair, in turn, if (1) a defendant's due process rights were violated by defects in his underlying removal proceeding, and (2) he suffered prejudice as a result of the defects.

*United States v. Garcia-Santana*, 774 F.3d 528, 532-33 (9th Cir. 2014) (internal quotation marks and citations omitted). The 2011 removal documents indicate that Ochoa-Oregel was removed through an expedited removal proceeding sanctioned by 8 U.S.C. §1225(b)(1). Section 1225(b)(1) provides for the expedited removal of aliens who are not legal permanent residents. Ochoa-Oregel's 2011 removal order, which he now collaterally attacks, was the product of the expedited removal procedure. (*See* Def.'s Mot. to Dismiss, Exhs. L); *c.f. United States v. Hernandez-Vermudez*, 356 F.3d 1011, 1013-1015 (9th Cir. 2004) (holding expedited administrative removal set out in §1228(b) applies to aliens who were not lawfully admitted for permanent residence or paroled and who entered the United States without inspection). Because Ochoa-Oregel's 2011 removal was an expedited removal, Ninth Circuit precedent compels the conclusion that administrative review

- 3 -

was exhausted and judicial review was deprived.[2]  Nevertheless, the defendant still bears the burden of establishing a deprivation of due process rights and legal prejudice.  He has satisfied the first and second prongs.

"To satisfy the third prong — that the order was fundamentally unfair — *the defendant bears the burden* of establishing both that the deportation proceeding violated his due process rights and that the violation caused prejudice." *United States v. Raya-Vaca*, 771 F.3d 1195, 1201-02 (9th Cir. 2014) (citation omitted) (emphasis added).  In the case at bar, the Defendant has not carried his burden.

Ochoa-Oregel contends he suffered prejudice in 2011 because it is plausible that he would have been granted relief in the form of withdrawal of application for admission, had he requested the relief.  But he did not request relief.  (Mot. to Dismiss, Exhibit M.)  And even now he does not state that he would have requested such relief.  (*Id.*)  Nevertheless, he argues that it is plausible that he would have been granted such relief.

### B.  "Some Meaningful Review"

Congress intended that expedited removal orders would *not* be subject to collateral attack in a §1326 case.  For expedited removal orders, Congress specifically eliminated from federal court jurisdiction the authority to hear a

---

[2]  "As the district court recognized and as the Government concedes, the statute governing expedited removal proceedings afforded Raya–Vaca no opportunity for administrative or judicial review.  *See, e.g.,* 8 U.S.C. § 1225(b)(1)(C) ("Except as provided in the subparagraph on credible-fear interviews, a removal order ... is not subject to administrative appeal ...."); *id.* § 1225(b)(1)(A)(i) ("If an immigration officer determines that an alien ... who is arriving in the United States ... is inadmissible ..., the officer shall order the alien removed from the United States *without further hearing or review*...."); *see also Barajas–Alvarado*, 655 F.3d at 1082 ("The Immigration & Nationality Act (INA) precludes meaningful judicial review of the validity of the proceedings that result in an expedited removal order.").  We therefore conclude that Raya–Vaca exhausted all available administrative remedies and was deprived of the opportunity for judicial review." *Raya-Vaca*, 771 F.3d at 1202.

§1326(d) motion. *See* 8 U.S.C. §1225(b)(1)(D) (a court "shall not have jurisdiction to hear any claim attacking the validity" of an expedited removal order in a §1326 prosecution). Nevertheless, in this circuit a defendant is permitted at least "some meaningful review" of an expedited removal order when the order is used as an element for a reentry offense. *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1087 (9th Cir. 2011) (holding §1225(b)(1)(D) unconstitutional "to the extent it prohibits 'some meaningful review' in a §1326 criminal prosecution"), *cert. denied*, 132 S. Ct. 1983 (2012). Consequently, the 2011 expedited removal proceeding is reviewed here under the less demanding "some meaningful review" standard.

### C. Fundamental Fairness of Removal Order

Ochoa-Oregel must show that the expedited removal order was fundamentally unfair. The problem here is that Defendant has not established that he suffered a due process violation during the 2011 expedited removal proceeding. Without a due process deprivation he cannot establish the 2011 removal order was fundamentally unfair.

Ochoa-Oregel supposes that he continued to enjoy LPR status after the 2008 removal order became final, due to alleged flaws in that proceeding. If he were correct that his LPR status had been preserved through the time in 2011 that he arrived at the port of entry, he would succeed on his attack of the 2011 removal order. The §1225(b)(1) expedited removal procedures may be employed only for aliens who are not LPRs. But they are not to be utilized for aliens who are LPRs. 8 C.F.R. §235.3(b)(5)(ii). However, as discussed later, his LPR status automatically terminated when his 2008 removal order became final.

Ochoa-Oregel maintains that the 2008 removal order was invalid because it was based upon a California state conviction for California Penal Code § 243(e)(1)

which is not categorically a crime of domestic battery.[3]  Assuming, without deciding that is correct, he then posits that his LPR status should have been preserved. However, his theory cannot withstand the weight of contrary authority. Immigration regulations make clear that an alien's LPR status terminates once a final order of removal is entered.

Twin regulations contain the following description of LPR status and when it terminates.  Title 8, Code of Federal Regulations Chapter 1.2 states,

> Lawfully admitted for permanent residence means the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed. *Such status terminates upon entry of a final administrative order of exclusion, deportation, or removal.*

(Emphasis added).  Chapter 1001.1(p) of the regulations defining the term echoes the language,

> The term lawfully admitted for permanent residence means the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed. *Such status terminates upon entry of a final administrative order of exclusion, deportation, removal, or rescission.*

Title 8 C.F.R. §1001.1(p) (emphasis added); *Cho v. United States Attorney General*, 578 Fed. App'x 931, 932 (11th Cir. 2014) (the regulations repeat the statute but add the final sentence); *see also United States v. Yakou*, 428 F.3d 241, 250 (D.C. Cir. 2005) (noting the Justice Department's comments that the 1996 amendment to § 1001.1(p) adding the last sentence was intended to codify the prior rule and provide finality in immigration proceedings).  Consequently, the general rule is that an alien's LPR status automatically terminates when he or she suffers a final order of removal.  That changes an alien's status, from carrying the privilege of residing

---

[3] Battery under California Penal Code § 242 is not a categorical crime of violence because the statute as interpreted by California courts does not require the use of violent force.  *United States v. Colon-Arreola*, 753 F.3d 841, 844 (9th Cir. 2014); *People v. Mesce*, 52 Cal. App. 4th 618 (Ct. App. 1997).  And the statute appears to be indivisible.  *United States v. Lee*, 2016 U.S. App. LEXIS 8402 (9th Cir. May 6, 2016).

within the United States, to being inadmissible.[4]  8 U.S.C. § 1182(a)(9)(C)(i)(II) ("Any alien who – has been ordered removed under section 1225(b)(1) of this title, section 1229a of this title, or any other provision of law, and who enters or attempts to reenter the United States without being admitted is inadmissible.").

The concept makes practical sense.  When a sovereign decides that an alien should be removed from its country, it would make little sense for the sovereign to, at the very same time, continue to extend the privilege of permanent residence within its borders.  It makes perfect sense to withdraw the privilege of permanent residence at the time an alien is ordered removed.  It is the sovereign's prerogative. *C.f. Landon v. Plasencia*, 459 U.S. 21, 32 (1982) ("[A]n alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative.").

*United States v. Alarcon-Tapia* is persuasive.  599 Fed. App'x, at 279.  In *Alarcon-Tapia*, the court reasoned an alien who had been granted LPR status, automatically lost that privileged status and became inadmissible when he was ordered removed:

> We recognize that Alarcon-Tapia lost his status as a legal permanent resident as a result of the 1998 removal proceeding.  Nonetheless, regardless of any but-for causal nexus between his removal from the United States as a result of the 1998 order and his subsequent expedited removals in 2003, Alarcon-Tapia was still bound by the 1998 order unless and until it was invalidated through legal proceedings.  Thus, Alarcon-Tapia was an inadmissible alien in the eyes of the law when he sought admission to the United States in 2003.

*Id.* (citations omitted).  Other decisions are in accord.  *See Padilla-Romero v.*

---

[4]Having his old LPR card has no legal significance.  The alien's legal inadmissibility does not change simply because he carries what appears to be a facially valid LPR card. *Avalos-Martinez v. Johnson*, 560 Fed. App'x 385, 388 (5th Cir. 2014) ("Avalos's lawful permanent resident status terminated upon his removal in 2000. *See* 8 C.F.R. § 1.2. As a result, Avalos entered with an LPR card that did not carry with it the underlying right to enter, even if as he claims, it appeared to be a facially valid document.").

*Holder*, 611 F.3d 1011, 1012 (9th Cir. 2010) (undisputed that removal terminated alien's status as LPR); *Shin v. Holder,* 607 F.3d 1213, 1217 (9th Cir. 2010) ("8 C.F.R. § 1001.1(p) provides that LPR status terminates upon entry of a final administrative order of exclusion, deportation, removal, or rescission."); *Robleto-Pastora v. Holder,* 591 F.3d 1051, 1059 (9th Cir. 2010) ("[R]elevant authority indicates that aliens retain their LPR status until a final order of removal. *See* 8 C.F.R. § 1001.1(p)"); *Valdez v. Holder*, 435 Fed. App'x 654, 655 (9th Cir. 2011) ("[s]tatus as a lawful permanent resident ("LPR") was terminated when he was ordered removed in 1999. *See* 8 C.F,R. § 1001.1(p)"); *MacDonald v. United States*, Case No. 11cv1088-BEN (KSC), 2011 U.S. District LEXIS 148409 (S.D. Cal. Dec. 23, 2011) (noting that 8 C.F.R. § 1001.1(p) means LPR status terminates upon entry of a final administrative order of removal). The Court finds that Ochoa-Oregel automatically lost his LPR status when he was ordered removed in 2008. He was an inadmissible alien in the eyes of the law when he sought admission to the United States in 2011. Consequently, it was entirely proper to remove him through the mechanism of an expedited proceeding.

      Ochoa-Oregel argues that there is an exception to the general rule that applies in his case. The Court is not persuaded that a new exception should apply. But Ochoa-Oregel argues that when the removal proceedings violate due process resulting in prejudice, an alien technically retains his LPR status. (Mot. to Dismiss, at 20.) For support, he quotes *Nken v. Holder*, 556 U.S. 418, 420 (2009) (syllabus). But *Nken*, does not provide support. *Nken* addressed the standard for issuing a stay of removal when a petition for review is being adjudicated. *Id.* at 422 ("This case involves a statutory provision that sharply restricts the circumstances under which a court may issue an injunction blocking the removal of an alien from this country."). *Nken* said nothing about an alien retaining his LPR status after an order of removal (even a flawed order). It lends no support to Ochoa-Oregel's argument for an exception to the general rule.

The only other place from which Ochoa-Oregel seeks support is *Matter of Gunaydin*, 18 I&N Dec. 326, 1982 WL 190699 (BIA 1982). But that decision dealt with an LPR who left the United States and returned only two days later, and did so without submitting to inspection. The BIA clarified that (consistent with the general rule) LPR status terminates when a deportation order becomes final, instead of the earlier moment the alien reenters without inspection. It does not suggest that an alien, upon order of removal, somehow preserves his LPR status for years until the removal proceedings are collaterally attacked in some future § 1326 prosecution.[5] Ochoa-Oregal's proposed exception to the general rule is ungrounded from immigration regulations and case law and would be unworkable in practice.

When his removal order became final and he was removed, he automatically lost his LPR status. As a result, the Government was not required to treat him as a LPR. He was not entitled to the rights and procedures accompanying formal removal proceedings for LPRs.

Because the 2011 removal order provides a basis for the § 1326 charge, independent of the 2008 removal order, and because the 2011 removal order was the product of permissible expedited proceedings, Ochoa-Oregal finally attacks the expedited proceedings *as independently defective*. Ochoa-Oregel claims that: (1) the immigration officers did not read to him, in Spanish, the record of sworn statements before having him sign the record; (2) he was not informed that he was in formal removal proceedings; (3) he was not informed that he had a right to call a lawyer; and (4) he was not told about any relief from removal. He claims these omissions violated his due process rights, citing *Raya-Vaca* (771 F.3d at 1205).

---

[5] And there is another problem with the argument. An alien who voluntarily leaves the United States for longer than a brief trip abandons his privileged LPR status. *United States v. Yakou*, 428 F.3d at 247-51 (noting the BIA view that LPR status is lost at the point when an alien engages in an abandoning act "like departing the United States for more than a temporary visit abroad") (citing 8 U.S.C. § 1101(a)(27)(A)). Ochoa-Oregel left the United States by virtue of being removed in 2010. He did not attempt to reenter until a year later in 2011. Eleven months abroad by an LPR was too long to retain LPR status in *Matter of Kane*, 15 I&N Dec. 258, 1975 WL 31493 (BIA 1975).

- 9 -

Unlike Raya-Vaca, who was found within the United States (near the California State Route 94 Border Patrol checkpoint), Ochoa-Oregel arrived at a port of entry. That fact makes all the difference. An alien within the United States is guaranteed due process protections. In contrast, an alien arriving at a port of entry is entitled to only what Congress has prescribed. *Raya-Vaca* points out the clear difference: "*Aliens who have entered the country are thus distinct from aliens at a port of entry over whom Congress has plenary power and for whom the process prescribed by Congress constitutes due process.*" 771 F.3d at 1203, n.5 (citations omitted) (emphasis added); *see also Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953) ("But an alien on the threshold of initial entry stands on a different footing: 'Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.'"); *Angov v. Lynch*, 788 F.3d 893, 898 (9th Cir. 2013) (due process protections afforded aliens within, not arriving at, United States).

Ochoa-Oregal argues that due process required that he be given competent translation services, citing *Baraja-Alvarado*, 655 F.3d at 1088. He states in his Declaration that he is not fluent in English and he does not recall "being read my answers in Spanish before I initialed each page on the Record of Sworn Statement from May 22, 2011 that my attorney showed me." (Motion to Dismiss, Exh. M, ¶¶ 10, 27.) The record demonstrates that Ochao-Oregel was read (and he initialed) the Record of Sworn Statement which includes the charges of inadmissibility, and the document itself says that it was read to him in Spanish. (Response in Opp'n., Exh. 10.) He signed the Jurat in English indicating he had read the statement. (*Id.*, Exh. 11.) He lived in the United States since he was a baby and attended public schools. He knows some English. (Even his own signed Declaration in this case is in English). (Motion to Dismiss, Exh. M.) From this record it has not been established that he needed translation services. Even if he did, the record is unambiguous as to the fact that the form was read to him in Spanish, a language in

which he says he is fluent. (Response in Opp'n, Exh. 10.) He relies on *Barajas-Alvarado*, but in that case the record was ambiguous because the Record of Sworn Statement said it was read in Spanish, while it also had a box checked that indicated it was not read in Spanish. 655 F.3d at n.13. Also, *Barajas-Alvarado* simply assumed that due process requires competent translation services. *Id.* at 1088. That assumption is difficult to square with the more recent decisions of *Raya-Vaca* and *Angov* that clarify aliens arriving at a port of entry do not enjoy the guarantees of the Due Process Clause. In any event, the record indicates not only that the charges were read in Spanish, but that Ochoa-Oregel may not have even needed English translation services.

He also claims that he was not informed that he was in formal removal proceedings. He was not in a formal deportation proceeding. He was in an expedited proceeding. Even if he was entitled to due process protections, and even if due process required such an advisal, the omitted advisal would have been incorrect.

He also claims that he was not advised he could call a lawyer. A similar claim was made by the defendant in *Barajas-Alvarado*, which the Ninth Circuit called "meritless on its face." 655 F.3d at 1088.

Lastly, Ochoa-Oregel claims that the Government failed to advise him of the only form of discretionary relief possibly available to him: withdrawal of his application for admission.[6] But it would not matter. Unlike in regular removal proceedings concerning lawful permanent residents, an immigration officer has no affirmative duty to inform a non-LPR applicant that he may ask to withdraw his application for admission. *United States v. Sanchez–Aguilar,* 719 F.3d 1108, 1112 (9th Cir. 2013) (rejecting a §1326 collateral attack on a prior expedited removal order where there was no advice of discretionary relief); *Alarcon-Tapia*, 599 Fed.

---

[6] An alien who has not been admitted is deemed by statute to be an "applicant for admission." 8 U.S.C. §1225(a)(1).

- 11 -

App'x at 279 ("aliens in expedited removal proceedings do not have a due process right to be informed of their ability to withdraw their application for admission"); *United States v. Bayardo-Garcia*, 590 F.App'x 660, 662 (9th Cir. 2014) (same). Under the "some meaningful review" standard, the Court finds no fundamental unfairness in the expedited proceeding which produced Ochoa-Oregel's 2011 removal order.

Although no due process violation has been established, even if one were, § 1326 would still require a showing that the alien suffered prejudice. *See United States v. Lopez-Vasquez*, 227 F.3d 476, 485-86 (5th Cir. 2000) (described by *Barajas-Alvarado* as a case where an alien's collateral challenge to an expedited removal order failed because he did not suffer any prejudice)*; c.f. United States v. Reyes-Bonilla*, 671 F.3d 1036, 1052 (9th Cir. 2012) (holding that violation of a right in an expedited removal hearing was not inherently prejudicial and without demonstrating a plausible claim to relief, alien was not actually prejudiced).[7]

---

[7]Ninth Circuit decisions reviewing expedited removal orders since *Barajas-Alvarado* – removal orders which *per se* apply only to aliens who are not permanent residents – have likewise required a defendant to establish prejudice. For example, in *United States v. Garcia-Gonzalez*, 791 F.3d 1175, 1177 (9th Cir. 2015), the court explained:

> Garcia's predicate removal was an expedited removal at the border. The Constitution does not entitle "non-admitted aliens" to "any procedure vis-à-vis their admission or exclusion." "Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." Thus, the regularity of Garcia's expedited removal proceeding is judged solely by the procedures set out in 8 U.S.C. § 1225(b) and 8 C.F.R. § 1235.3(b).
>
> *To demonstrate prejudice* from a due process violation, Garcia must show that, absent the violation, it was plausible he would have obtained discretionary relief from removal. The only form of discretionary relief available in expedited removal proceedings is withdrawal of application for admission.

(citations omitted) (emphasis added); *see also Raya-Vaca*, 771 F.3d at 1206 ("To succeed in demonstrating that the 2011 expedited removal order was fundamentally unfair, Raya-Vaca *must also establish that he suffered prejudice* as a result of the entry of the order.") (emphasis added); *United States v. Barragan-Camarillo*, 460 F. App'x 637, 639 (9th Cir. 2011) ("To the extent that Barragan–Camarillo brings an as-applied challenge to his own expedited removal order, his claim fails because, even if he could

Ochoa-Oregel has the burden of establishing both a denial of due process and prejudice. The lack of either is fatal to his collateral attack. This is especially true since the collateral attack of an expedited removal order of a non-legal permanent resident is judged under the less stringent "some meaningful review" standard. Here, he cannot establish prejudice because his long and serious criminal history makes it implausible that he would have been granted withdrawal of his application for admission.

### III. CONCLUSION

Having concluded that the 2011 removal order provides an independent ground for a § 1326 charge, and having conducted "some meaningful review" of the 2011 expedited removal order, the Court finds that the order was not fundamentally unfair. His § 1326(d) collateral attack fails. Defendant's Motion to Dismiss the Indictment is hereby denied.

The Court finds that the time from May 31, 2016, through the date of this order is excludable time under 18 U.S.C. § 3161(h)(1)(D) ("delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion"), and (H) ("delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court").

DATED: July 22, 2016

_____
Hon. Roger T. Benitez
United States District Judge

---

show that his due-process rights were violated, he *has not shown any resulting prejudice*.") (emphasis added).